IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JASON YOUNG, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:25-cv-00143 |
| VANCE VANTELL, et al., | ) JUDGE RICHARDSON |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Jason Young, while incarcerated at the Trousdale Turner Correctional Center (TTCC),[1] filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed as a pauper. (Doc. No. 2.) The Court granted Plaintiff pauper status (Doc. No. 4), and he subsequently filed an amended complaint (Doc. No. 5).

On March 14, 2025, Plaintiff filed a second amended complaint. (Doc. No. 11). This case is before the Court for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

**I. INITIAL REVIEW**

**A. Legal Standard**

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune

---

[1] Plaintiff was subsequently released from state custody when his sentence expired. *See* Tennessee Department of Correction Felony Offender Information Lookup, https://foil.app.tn.gov/foil/details.jsp (last visited Feb. 23, 2025) (stating that sentence for inmate Jason Young, TDOC ID 648380, ended on Jan. 10, 2025). Plaintiff is now incarcerated at the Trousdale County Jail. (*See* Doc. No. 6.)

from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court assesses whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

**B. Factual Allegations**

The complaint form incorporates an attached description of "Direct Actions, Deliberate Inactions, and Relevant Events" (Doc. No. 11-2) to provide the facts upon which this lawsuit is based, concerning the conditions of Plaintiff's confinement in disciplinary segregation at TTCC from July 24, 2023 to November 8, 2024. (*See* Doc. No. 11 at 5; *see also* Doc. No. 11-4 at 18.[2])

---

[2] This exhibit is a declaration executed by Plaintiff on March 8, 2025, in which he clarifies that he was moved "from Bravo Unit in general population to Alpha Unit of segregation" on July 24, 2023, and remained there until January 10, 2025. (Doc. No. 11-4 at 18.)

In the incorporated document—which will be referred to collectively with the principal pleading as Plaintiff's Second Amended Complaint (SAC)—Plaintiff separately pleads each Defendant's liability for the conditions at TTCC, beginning with CoreCivic, TTCC Warden Vincent Vantell, Tennessee Department of Correction (TDOC) Commissioner Frank Strada, Contract Monitor R. Hill, TDOC Assistant Commissioner L.R. Thomas, and "Director John Doe."

The allegations against these first six Defendants do not contain facts describing particular events or injuries. Instead, the SAC broadly claims their "ignorance to the activities of unnecessary rigors, antithetical degradation of human dignity, deprivations of minimal civilized measures of life's necessities" (Doc. No. 11-2 at 1); their denial of Plaintiff's rights to "adequate medical care, due process, adequate grooming, adequate exercise, adequate health care products, adequate hair care products, adequate hygiene[e], and adequate cleaning supplies" (*id.* at 2); their "deliberate inaction" in response to inhumane conditions (*id.* at 3); their "direct action of indifference," "inhumane treatment," and "gross negligence" (*id.*); their "fail[ure] to adequately supervise subordinates" or "to remedy the unlawful conditions of confinement" (*id.* at 3–4), and the like.

The SAC next discusses Plaintiff's claims against TTCC Assistant Wardens Norman, Ponds, and Porter. Assistant Warden Norman was allegedly indifferent to Plaintiff's report of a "lack of recreation and showers," and failed to "attempt to remedy [these] conditions." (*Id.* at 5.) Assistant Warden Bryon Ponds is accused of failing to remedy Plaintiff's inhumane living conditions after Plaintiff spoke with him "about housing conditions and how policy was not being followed." (*Id.*) Assistant Warden Porter allegedly took part in "acts of corporal punishment via 'U.O.F.'[3] to enforce and suppress any objection to the status [quo] of cruel and unusual

---

[3] Plaintiff uses this acronym (which could be "V.O.F."—his handwriting is unclear) without defining what it stands for. (*See* Doc. No. 11-2 at 6, 8, 9, 10.) From the context, it appears that U.O.F. may be a disciplinary charge that can result in the imposition of a restriction against possessing personal property.

punishment, inhumane treatment, and inhumane living conditions," and "to violate Plaintiff Young's due process pertaining to being placed on 'property restriction.'" (*Id.* at 6.)

Defendant Williams, the "Chief of Unit Managers," is accused of being indifferent to Plaintiff's need for "adequate medical care for open stab wounds" on July 24, 2023. (*Id.*) Also on that date, Williams is alleged to have deprived Plaintiff "of property that was later abandoned," and to have denied him a mattress. (*Id.*) Finally, Williams is alleged to have "personally ordered the violation of due process during the fraudulent classification to close security." (*Id.*) Plaintiff complained to Defendant Williams on seven occasions between August 7 and 22, 2023, concerning "lack of adequ[ate] medical care, lost property, need of showers, need of recreation, need of cleaning supplies, and the most pressing need for bedding and mattress." (*Id.* at 7.)

On August 10, 2023, Unit Manager Weathers "signed off on segregation logs that Plaintiff Young was in good wellbeing which was false, considering at that point Plaintiff Young was in bloody cloth[e]s for 17 days." (*Id.* at 9.)

On August 14, 2023, Plaintiff communicated with Chief Swartz, informing him that he had been without showers or his property for nine days, that he was never allowed recreation, and that he was denied cleaning supplies. (*Id.*) Ten days later, Plaintiff renewed these complaints to Swartz "considering unlawful conditions were the same," but Swartz was indifferent to them. (*Id.* at 7–8.)

On August 27, 2023, Defendant Crawford informed Plaintiff that he had been reclassified to a higher level of security. (*Id.* at 11.) When Plaintiff objected that he had not received prior notice or other due process, Crawford "stormed off promising Plaintiff . . . will never get out [of] the hole." (*Id.* at 11–12.)

Chief Carter is accused of "actively participat[ing] in 'U.O.F.' to violate . . . due process pertaining to being placed on 'property restriction,'" and to have been indifferent to Plaintiff's

report on November 3, 2023 of "extremely low" cell temperatures, allegedly below forty degrees. (*Id.* at 8.)

Captain Smith is the "Alpha Unit supervisor who used 'U.O.F.' on Plaintiff Young multiple times to violate due process." (*Id.* at 9.) Lt. Batten and Lt. Eckford were also party to "acts of corporal punishment via 'U.O.F.'" (*Id.* at 10.)

On November 17, 2023, an official named Gilliam blocked Plaintiff's phone PIN after he complained that his legal mail had been opened outside his presence. (*Id.* at 11.)

Plaintiff informed Sgt. Cuebas of all "ongoing situations"—"loss of all property, personal property loss, deprived of a mattress, denied cleaning supplies, denied recreation, mail tampering, lack of adequate medical care, lack of adequate grooming supplies or services, lack of adequate health care products, denied adequate hygiene products or supplies, denial of due process, and temperature lows"—but Cuebas failed to remedy these situations and was "[d]irectly party to the denial of showers." (*Id.* at 12.) Defendants Graham and Wilson likewise took no action in response to the deprivations Plaintiff suffered. (*Id.* at 13.)

Defendant Tracy Andrews was "made aware yet fail[ed] to remedy" Plaintiff's improper placement on mail restriction. (*Id.* at 13–14.) Defendants "John Doe, Grievance Chairman" and "Brandon Doe" "systematic[ally]" rejected Plaintiff's grievances. (*Id.* at 14.)

The SAC claims that the above Defendants' action/failure to act violated Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights. (Doc. No. 11 at 3.) It seeks a total damages award of $140 million to compensate Plaintiff for the "cost of long term treatment and medication related to injuries"; his property loss; his aches, pains, and other limitations related to "kni[fe] wounds that healed poorly"; the effects of mace on his skin and eyesight; and his post-traumatic stress. (*Id.* at 5.)

C. Analysis

Plaintiff has pled his case largely in conclusory fashion, without specific factual allegations to show exactly when and how particular Defendants acted to, for instance, deprive him of adequate medical care, due process, adequate hygiene products, adequate exercise, adequate cleaning supplies, etc. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; it will not allow a complaint against a collection of prison officials whose individual misconduct is not established by discrete facts. *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) ("Plaintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant.") (citation omitted); *cf. Sosa v. Massachusetts Dep't of Correction*, 654 F. Supp. 3d 33, 41–42 (D. Mass. 2023) ("Plaintiff's allegations with respect to the culpability of many of the defendants are conclusory and do not support an inference of deliberate indifference. The pertinent allegations against [seven defendants] consist of a recitation of each of their roles and a blanket assertion that they were collectively responsible for denying [plaintiff his rights]. Such allegations are insufficient to state a claim of deliberate indifference without further context or factual support.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a complaint must contain non-conclusory factual allegations that "raise a right to relief above the speculative level")).

The "short and plain statement" required by Rule 8(a)(2) must be supported by "sufficient factual matter, accepted as true," to make the claimed right to relief not just possible, but plausible. *Hill*, 630 F.3d at 470–71. This standard does not require *detailed* factual allegations, but it does require "more than labels[,] conclusions, [or] a formulaic recitation" of the elements of a cause of action. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)). Plaintiff's factual allegations must be "sufficient to give notice to the defendant as to what claims are alleged," *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), and to enable the Court to determine the viability of those claims.

A plaintiff claiming unconstitutional conditions of confinement must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Contemporary standards of decency determine whether conditions of confinement meet this standard. *See, e.g.*, *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Such standards are violated only by "extreme deprivations" that deprive the prisoner of the "minimal civilized measure of life's necessities." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9, (1992)). As explained below, the SAC does not contain factual allegations sufficient to plausibly establish that Plaintiff's constitutional rights were violated by his conditions of confinement or any particular named Defendant.

1. <u>Claims against CoreCivic, TTCC Warden Vincent Vantell, TDOC Commissioner Frank Strada, Contract Monitor R. Hill, TDOC Assistant Commissioner L.R. Thomas, and "Director John Doe"</u>

Plaintiff's claims against CoreCivic, TTCC Warden Vincent Vantell, TDOC Commissioner Frank Strada, Contract Monitor R. Hill, TDOC Assistant Commissioner L.R. Thomas, and "Director John Doe" either lack sufficient factual detail or otherwise fail plausibly to demonstrate that these individuals are personally liable for the alleged inhumane conditions at TTCC. (*See, e.g.*, Doc. No. 11-2 at 1–5 (alleging that CoreCivic has "systematic deficiencies in training, supervision, staffing, and resources"; that Vantell is "the sickness behind the status [quo] of crule (sic) and unusual punishment, inhumane treatment, and inhumane living conditions" at TTCC); that Strada took "deliberate inaction of clear remedies to" inhumane conditions; that Hill is guilty of "inaction to report the activities of unnecessary rigors" and failure "to adequately

supervise subordinates"; that Thomas took "deliberate inactions" in response to reports of inhumane conditions; and that Doe failed "to remedy the unlawful conditions of confinement).) "[A]ll individual capacity claims" under Section 1983—whether against a prison guard who had direct contact with the plaintiff, a supervising officer who did not, or an officer of a corporate entity or a state agency—"require[] an allegation of personal liability." *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025) (citing *Peatross v. City of Memphis*, 818 F.3d 233, 240–41 (6th Cir. 2016)). Moreover, if the defendant is a supervisory official, the claim against that official must be based on "active unconstitutional behavior" rather than "a mere failure to act." *Peatross*, 818 F.3d at 241; *see Iqbal*, 556 U.S. at 676 (stating that "a [§ 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Plaintiff's claims against Vantell, Strada, Hill, Thomas, and Doe assert a general failure to take preventative or remedial action despite knowledge of "unnecessary rigors," "harsh conditions," "deprivations of minimal civilized measures of life's necessities," etc. These claims are not supported by facts sufficient to demonstrate these Defendants' personal involvement with any particular instance where Plaintiff's rights were infringed by the conditions at TTCC. And as far as a corporate entity such as CoreCivic, liability under Section 1983 can only be imposed if a policy of the corporation was the moving force behind the injury claimed in the Complaint. *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014). The SAC does not allege any such CoreCivic policy.[4] Accordingly, the SAC fails to state a plausible claim against these Defendants.

---

[4] Claims against CoreCivic employees in their official capacity are treated as claims against CoreCivic, *see Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003), and therefore likewise fail for lack of any corporate policy that allegedly caused any claimed injury. Claims against TDOC officials in their official capacity are treated as claims against the State, which is not a proper Section 1983 defendant. *Padgett v. TDOC*, No.

2. Claims against TTCC Assistant Wardens Norman, Ponds, and Porter

The SAC's claims against TTCC Assistant Wardens Norman, Ponds, and Porter also suffer from a lack of specific factual allegations. Assistant Warden Porter was allegedly indifferent to Plaintiff's report of a "lack of recreation and showers," and failed to "attempt to remedy [these] conditions." (*Id.* at 5.) Assistant Warden Bryon Ponds is accused of failing to remedy Plaintiff's inhumane living conditions after Plaintiff spoke with him "about housing conditions and how policy was not being followed." (*Id.*) Assistant Warden Porter allegedly took part in "acts of corporal punishment via 'U.O.F.' to enforce and suppress any objection to the status [quo] of cruel and unusual punishment, inhumane treatment, and inhumane living conditions," and also violated Plaintiff's "due process pertaining to being placed on 'property restriction.'" (*Id.* at 6.) Again, these allegations are largely conclusory and otherwise offered at a level of generality that precludes the finding of any plausible claim to relief for a constitutional violation. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (affirming dismissal of complaint alleging that defendants "threatened witnesses, unlawfully seized property, submitted false statements to courts," etc., because civil rights complaints "are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"); *see also Wyley v. City of Cleveland*, No. 25 CV 231, 2025 WL 1167152, at *3 (N.D. Ohio Apr. 22, 2025) (finding that "unclear, general, and conclusory allegations are insufficient to meet basic federal notice pleading requirements or raise a right to relief, on any federal claim, above the speculative level").

---

2:21-CV-59-DCLC-CRW, 2021 WL 1112784, at *3 (E.D. Tenn. Mar. 23, 2021) (citing *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State" and is not a person within the meaning of § 1983)). While a suit for prospective injunctive relief for a continuing violation of federal law may be brought against a TDOC official in his or her official capacity, *Jones v. Mays*, No. 3:19-CV-00795, 2020 WL 5106760, at *5 (M.D. Tenn. Aug. 31, 2020); *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908), no such relief is sought in this case.

### 3. Claims against Chief Williams

The SAC claims that "Chief of Unit Managers" Williams denied Plaintiff adequate care for "open stab wounds" on July 24, 2023; that he deprived Plaintiff of a mattress for a two-week period; that he "personally ordered the violation of due process during the fraudulent classification to close security"; and that he was "primarily responsible" for the loss of Plaintiff's personal property.

#### a. Medical needs

An Eighth Amendment claim[5] of deliberate indifference to medical needs has two components, one objective and one subjective. The objective component requires that Plaintiff's stab wounds present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018), i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If it does, the subjective component requires that Defendant Williams understood yet consciously disregarded the need for medical treatment. *See Rhinehart*, 894 F.3d at 738. Objectively, although Plaintiff alleges open stab wounds, he does not provide further details about the extent of his injuries and the corresponding need for medical treatment. However, the SAC

---

[5] The Eighth Amendment protects inmates serving sentences of imprisonment after conviction, like Plaintiff. *See Richmond*, 885 F.3d at 937 ("The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment."). In the case of state actors like Defendants, Eighth Amendment protections are applicable (when they are applicable) specifically by way of the Fourteenth Amendment. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). In these situations, courts generally speak in terms of "Eighth Amendment" protection without any reference (beyond an initial reference) to the Fourteenth Amendment. Eighth Amendment protection is applicable in the instant case.
   By contrast, the Due Process Clause of the Fourteenth Amendment provides the same kind (though not always identical) protection to pretrial detainees. *Richmond*, 885 F.3d at 937 ("The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees."). Such protection is generally referred to by courts as "Fourteenth Amendment" protection without any reference (beyond an initial reference) to the Due Process Clause. Fourteenth Amendment protection is inapplicable here.

includes an allegation that those wounds "healed poorly," and that he has "reduced range of hand motion." (Doc. No. 11 at 5.) Assuming for purposes of initial review that the stab wounds were objectively serious, the SAC does not adequately allege that Williams was subjectively aware of the need for treatment and consciously disregarded that need. The SAC merely states that Williams undertook "direct actions of indifference . . . in the totality of harsh conditions at TTCC[.]" (Doc. No. 11-2 at 6.) It then alleges that, "[o]n 7/24/23 plaintiff Young was denied adequate medical care for open stab wounds[.]" (*Id.*) These cursory, conclusory allegations are insufficient to state a plausible claim of deliberate indifference to medical needs.

### b. Mattress deprivation

Plaintiff alleges that he complained to Williams between August 7 and 22, 2023 about the deprivation of a mattress (Doc. No. 11-2 at 7). But "[i]n the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing, *e.g.*, *Jones v. Toombs*, No. 95–1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) ("The defendants did not violate [the plaintiff's] Eighth Amendment rights by depriving him of a mattress for a two week period.")). Plaintiff does not allege any injury as a result of being deprived of a mattress and bedding. He thus fails to state a plausible Eighth Amendment claim in this regard.

### c. Due process

The SAC claims that Defendant Williams violated Plaintiff's due process rights in two ways: by classifying him to "close security" and by depriving him of his personal property. The assertion of the first claim is limited to the following sentence: "Chief Williams personally ordered the violation of due process during the fraudulent classification to close security." (Doc. No. 11-2 at 6.) This conclusory allegation does not support any plausible due process claim.

Regarding the loss of personal property, the Supreme Court has held that, where adequate remedies are provided by state law, a state official's negligent or intentional loss of personal property does not state a claim cognizable under the Fourteenth Amendment's Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Because Plaintiff's claim is premised upon a state actor's allegedly unlawful inaction, he must plead and prove the inadequacy of state post-deprivation remedies to state a federal claim. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Torrez v. Corr. Corp. of Am.*, No. CV 10-2093-PHX-MHM, 2010 WL 4922876, at *5–6 (D. Ariz. Nov. 29, 2010) (holding that "availability of a common-law tort suit against a private prison employee constitutes an adequate post-deprivation remedy" that "precludes a claim for violation of due process"). Plaintiff has failed to plead such inadequacy.

The Sixth Circuit has expressly held that "the State of Tennessee has provided adequate procedures to assure the return of items either negligently or intentionally converted, *see* Tenn. Code Ann. § 9-8-[3]07, and in the absence of resort to state remedies, we do not believe that a federal court may assert jurisdiction." *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985). Therefore, Plaintiff's failure to plead the inadequacy of post-deprivation remedies in the state court system requires the dismissal of his federal property-loss claim.

4. <u>Claims against Unit Manager Weathers, Chief Swartz, Chief Carter, Sgt. Cuebas, correctional officers Graham and Wilson, Captain Smith, and Lts. Batten and Eckford</u>

The SAC alleges that Unit Manager Weathers "signed off on segregation logs that Plaintiff Young was in good wellbeing which was false, considering at that point Plaintiff Young was in bloody cloth[e]s for 17 days." (Doc. No. 11-2 at 9). These allegations do not support any claim for violation of Plaintiff's constitutional rights. *Cf. Fletcher v. Dykes*, No. CV TDC-17-0914, 2018 WL 3785143, at *9 (D. Md. Aug. 9, 2018) (dismissing "claims that Defendants made false

statements in reports relied upon during the disciplinary proceedings," as due process protections do not reach the credibility of witness statements).

The SAC's claims concerning exposure to cold cell temperatures and deprivation of showers, recreation, cleaning supplies, and grooming supplies—leveled against Chief Swartz, Chief Carter, Sgt. Cuebas, and correctional officers Graham and Wilson—are not supported by sufficient factual allegations to establish their plausibility as conditions that deprived Plaintiff of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525. "The Sixth Circuit has held that only 'a total or near total deprivation of exercise or recreational opportunity, without penological justification' violates the objective standard for stating an Eighth Amendment or Fourteenth Amendment conditions-of-confinement claim." *Hudson v. Woosley*, No. 4:25-CV-66-JHM, 2026 WL 243217, at *5 (W.D. Ky. Jan. 29, 2026) (quoting *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995)). Here, Plaintiff's allegation that he reported being "denied recreation" (*e.g.*, Doc. No. 11-2 at 12, 13), without more, is "too vague to support a total or near-total denial of recreation." *Hudson*, 2026 WL 243217, at *5; *see also Harris v. Erdos*, No. 1:20-CV-120, 2021 WL 4227406, at *4 (S.D. Ohio Aug. 24, 2021), *report and recommendation adopted*, 2021 WL 4225125 (S.D. Ohio Sept. 16, 2021) (dismissing claim based on inmate's "vague allegation that he was denied recreation" without specifying "who denied him recreation" or "the circumstances surrounding that denial").

Moreover, the SAC's allegation that Plaintiff's cell temperature was "extremely low" on November 3, 2023, and "at times tested below 40 [degrees]" (Doc. No. 11-2 at 8) is, at best, a rough approximation of temperature that does not specify important facts, such as the duration of the low temperature or any injury that resulted to Plaintiff. It therefore fails to support a plausible Eighth Amendment claim. *See Hudson*, 2026 WL 243217, at *6 ("Plaintiff's vague and conclusory

statement about the temperature," without asserting the basis for knowing the exact temperature, stating its duration, or specifying any injury other than discomfort "does not rise to the level of an '[e]xtreme deprivation[]' to meet the objective standard" of an Eighth Amendment claim.) The same is true of the SAC's allegations of a "denial of cleaning supplies" (Doc. No. 11-2 at 7) and denial of "adequate grooming supplies or services, . . . health care products, [and] . . . hygiene products or supplies." (*Id.* at 12.) No right to relief is plausibly claimed on the basis of such general, conclusory allegations.

In its allegations against Chief Swartz, the SAC references Plaintiff's communication to Swartz that Plaintiff had been "9 days without showers," property, recreation, or cleaning supplies, and that those "unlawful conditions were the same" ten days later. (*Id.* at 7.) The SAC alleges not that Swartz himself denied Plaintiff the ability to shower—Sgt. Cuebas is alleged to be the officer "[d]irectly party to the denial of showers" (*id.* at 12)—but rather that Swartz did not act "to remedy circumstances." (*Id.* at 8.) Assuming that this claim against Chief Swartz seeks to impose supervisory liability, the mere failure to act to remedy a subordinate's deprivation of showers cannot render him liable under Section 1983. *Peatross*, 818 F.3d at 241; *see also Sanford v. Armour*, No. 19-1270-JDT-CGC, 2020 WL 4369452, at *8 (W.D. Tenn. July 30, 2020) ("A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity.") (citing, *e.g.*, *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008)).

However, the SAC also alleges that after Swartz was made aware that Plaintiff had been denied a shower for nine days, Plaintiff's "unlawful conditions were the same" ten days later. This allegation is construed (favorably to Plaintiff, as required at this stage of the proceedings) to claim

that Cuebas had "directly" denied showers for nineteen days,[6] and that for the final ten of those days Swartz knew it and acquiesced in the denial. The denial of showers for 19 days, though far from ideal, is not necessarily unlawful because it does not necessarily amount to a denial of constitutionally adequate hygiene. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'") (citation omitted). "[T]he Constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene." *Atkins v. Washington*, No. 2:23-CV-253, 2024 WL 2075809, at *9 (W.D. Mich. May 7, 2024). Even when an inmate was denied showers *and* all personal hygiene items for six days, the Sixth Circuit found no actionable constitutional claim "[g]iven the brief span of time[.]" *Siller v. Dean*, 205 F.3d 1341 (Table), 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000); *see also Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (finding that inmate who had "no toilet paper, soap, toothpaste, toothbrush, running water, or the ability to shower for six days" did not state a viable Eighth Amendment claim) (citing *Siller*, *supra*).

Here, although Plaintiff complains of a longer span without a shower, he alleges the denial of "adequate" hygiene supplies, not all hygiene supplies. Only a "long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *cf. Riddick v. Arnone*, No. 3:11CV631 SRU, 2012 WL 2716355, at *5 (D. Conn. July 9, 2012) (denial of showers, toothbrush, toothpaste, deodorant, and soap for ten days did not violate Eighth Amendment). In this case, especially given that (1) the lengthy SAC contains very few factual allegations concerning Plaintiff's requests for access to the shower or the conditions that led to the denial of such access, and (2) the SAC does not claim injury or request

---

[6] The SAC does not otherwise allege any number of consecutive days during which Plaintiff could not shower. His attached declaration simply states that he was denied "[a]dequate grooming supplies, showers, or like services" during his disciplinary segregation between July 24, 2023 and November 8, 2024. (Doc. No. 11-4 at 20.)

damages on account of inadequate provision for his hygiene during the limited time in question (*see* Doc. No. 11 at 5), the Court finds that Plaintiff fails to plead a plausible Eighth Amendment claim related to hygiene. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (stating that "[c]ourts have not found the objective component [of an Eighth Amendment claim] satisfied where the deprivation of hygiene items was temporary" and the inmate did not suffer physical injury as a result) (citing *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1988) (no constitutional violation where prison officials failed to provide prisoner with toilet paper for five days, and with soap, toothbrush, and toothpaste for ten days)).

Finally, Chief Carter is accused of "actively participat[ing] in 'U.O.F.' to violate . . . due process pertaining to being placed on 'property restriction'" (Doc. No. 11-2 at 8), and Captain Smith, Lt. Batten, and Lt. Eckford are likewise charged with using "U.O.F." against Plaintiff to violate his due process rights, or to punish him for objecting to the conditions of his confinement. (*Id.* at 9–10). Again, the SAC does not define "U.O.F." or otherwise indicate exactly what is meant by "using" it in relation to the imposition of property restrictions. The Court construes the SAC's references in this regard as asserting the unlawful, punitive use of a disciplinary charge that can result in the imposition of a restriction against possessing personal property. To the extent that Plaintiff is attempting to claim that Defendants Carter, Smith, Batten, and Eckford used the "U.O.F." charge to retaliate against him, he has done so in an entirely ambiguous and conclusory fashion. (*See id.* at 8–10.) The most detailed allegations in this regard are against Defendant Carter, who allegedly "lead the charge" on March 5, 2024, "saying it's by Warden order [that he] actively participated in 'U.O.F.' to violate Plaintiff Young's right to due process pertaining to being placed on 'T.T.C.C. evil version of property restriction." (*Id.* at 10 (cleaned up).) Such allegations do not support any plausible right to relief.

### 5. Claims against Defendants Crawford, Gilliam, Andrews, and Doe

The SAC claims that, on August 27, 2023, Defendant Crawford informed Plaintiff that he had been reclassified to a higher level of security. (Doc. No. 11-2 at 11.) When Plaintiff objected that he had not received prior notice or other due process, Crawford "stormed off promising Plaintiff . . . will never get out [of] the hole." (*Id.* at 11–12.) Plaintiff thus asserts a right to procedural due process in the context of reclassification to a higher security level. However, no such right exists under federal law. *See Mills v. Genovese*, No. 2:24-CV-02475-SHM-TMP, 2025 WL 422610, at *2 (W.D. Tenn. Feb. 6, 2025) ("An inmate does not have a constitutionally protected right to be assigned to a particular prison, security classification, or housing assignment.") (citing, *e.g.*, *Newell v. Brown*, 981 F.2d 880, 883 (6th Cir. 1992) (federal law does not create any liberty interest that would allow a state prisoner to avoid reclassification)). Neither does Tennessee law create a liberty interest for due process purposes with respect to security classification. *Adams v. Osborne*, No. 3:11-CV-599, 2013 WL 841494, at *4 (E.D. Tenn. Mar. 6, 2013). Accordingly, no plausible claim is stated against Defendant Crawford.

On November 17, 2023, Defendant Gilliam allegedly blocked Plaintiff's phone PIN after he (Plaintiff) complained that his legal mail had been opened outside his presence that same day. (Doc. No. 11-2 at 11.) The SAC does not say how long Plaintiff's phone PIN was blocked. It merely asserts that Gilliam "displayed deliberate indifference and retaliation . . . causing a greater stage of suffering." (*Id.*) This conclusory allegation based on one interaction with Gilliam does not support any plausible constitutional claim.

Defendant Andrews was "made aware yet fail[ed] to remedy" Plaintiff's improper placement on mail restriction. (*Id.* at 13–14.) Plaintiff was on mail restriction "for an exten[d]ed period of time" and his "due process in relation to rejected mail was violated regularly." (*Id.* at

13.) Andrews's failure to remedy this situation "was deliberately indifferent with continued acts creating hardship." (*Id.* at 14.) Once again, this conclusory style of pleading will not suffice to state a plausible claim. *Ryan*, 979 F.3d at 524 (requiring "more than labels[,] conclusions, [or] a formulaic recitation" of the elements of a cause of action).

Finally, the SAC claims "gross negligence in regard to due process" based on the "systematic" rejection of Plaintiff's grievances by Defendants "John Doe, Grievance Chairman" and "Brandon Doe." (Doc. No. 11-2 at 14.) But the "failure of a prison official to act favorably" on inmate grievances "is not itself a constitutional violation." *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696 (M.D. Pa. 2015) (quotation omitted) (citing, *e.g.*, *Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir. 2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.")). Nor does the "failure to take corrective action in response to an inmate grievance or complaint . . . supply the necessary personal involvement for § 1983 liability." *Sanford*, 2020 WL 4369452, at *8 (citing, *e.g.*, *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003)). Accordingly, the SAC does not state a plausible claim against these Doe Defendants.

## II. CONCLUSION

In light of this Order's explanation of the status of this case, Plaintiff's pending motions to ascertain the same (Doc. Nos. 12, 13) are **GRANTED**. For the reasons discussed above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

This is the final order in this action. The Clerk **SHALL** enter judgment under Fed. R. Civ. P. 58(b)(1) and close the file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE